Thank you. So we are at the last case of the day, Wishtoya Foundation v. United Water Conservation District. Good morning, Honors. May it please the Court, my name is Sean Ogle and I represent the United Water Conservation District. I intend to reserve three minutes for rebuttal. Today I will discuss three issues. First, I will discuss the improper use of an incidental take statement, which is based on a consultation process under Section 7 of the Endangered Species Act, as a finding of unlawful take in a private citizen suit, which is governed by Section 9 of the ESA. In particular, I will discuss the burden standard under each section and the standards actually used based upon the language in the 2008 Biological Opinion. Next, I will discuss the challenged evidence and the prejudice suffered by United as a result of its improper admission. And finally, I will discuss the regulatory agencies as indispensable parties. In particular, I will discuss the facts of this case and the application of Hammersley. With respect to the incidental take statement, the equating of an incidental take statement in the 2008 Biological Opinion with a finding of take in 2018 is at the very least a mixed question of law and fact, which must be reviewed de novo. What this is account... Well, de novo... I mean, we've got extensive factual findings, do we not, counsel? So those we have to review for clear error. And then the question is whether or not, on a de novo review, the law was properly applied. Yes, Your Honor. The question is whether or not invoking an incidental take statement, which is issued by a regulatory agency, in this case NMFS, which is governed under the Section 7 ESA process, rather than, in this case, this is a private citizen suit, which has a completely different... But you're making an assumption, which is that that's what the district court did. Right. Well, that... I apologize. Yes, that is actually the language used by the court, if you look at the order, which is the fine needs of fact docket number 209. Well, that was where I was going with my question. I mean, we've got an 11-day bench trial here at which numerous witnesses testified and a lot of documentary evidence was introduced. Is your argument that the evidence does not support the district court's finding of a take? Because it seems pretty compelling to me, based on the historical records concerning the migration and the population of the steelhead. Well, our position is, Your Honor, that the admission or the finding of an incidental take statement, which is issued under Section 7, as the same as a finding of actual take, is an error of law. But in addition... But where do you say that he did that, as opposed... Because the ultimate conclusion... Well, first of all, you have a legal argument that they're not necessarily the same. But this take here, the biological opinion, did say that essentially there would be a take, not that there may be a take. Well, the language used by the biological opinion was that there may be a take. No, I didn't think that was... That's the language of the statute. But what was the language of the biological opinion? Biological opinion often used the language such as expected, probably, or may. What is expected? Expected isn't... It's going to happen? But why wouldn't it still be relevant? Regardless of whether the legal standard's there, whether it was expected or whether there may be a take, why isn't it still relevant to the question? Why can't the district court say, I want to know what the government's found on this? Seems like the district court did the right thing and called the agencies in and heard all the evidence and seemed to base it on a whole lot more than just... Your argument seems to be so myopic on whether this actual document was considered, but it was just one of many things. I mean, I think you're right if the district court had said, well, read this document and a story, maybe you'd have a stronger argument. But that doesn't even seem remotely close to what happened here. And maybe... I don't want to jump your head to prejudice, but I think that's really where I'm hung up is even if there was a technical violation, as you're arguing, where's the prejudice? Are you really doubting? Are you really arguing that there's no take going on? Well, Your Honor, reviewing the critical findings of fact, which are contained in docket number 209, and in particular, paragraphs 244 through 249 and paragraph 252 of the findings of fact, paragraph 244 doesn't actually cite any evidence. Paragraph 245 cites evidence that is supposed to cite 244. However, the evidence cited in paragraph 245 is the erroneous equating of the incidental take statement with a finding of take under section 9. Counsel, I read 244, paragraph 244 at page ER 178 as being the introductory paragraph that begins there's ample evidence in the record that VFD and United's water diversions at VFD have resulted in harm in a manner fairly traceable to United, which constitutes a take under ESA. And then he goes on to lay out in great detail the supporting evidence, not only including the biological opinion, but also the testimony of the opinion's principal author, the evidence from the 2016 draft habitat conservation plan. I mean, it just goes on and on and on. So are you asking us to find those findings not credible or not supported by the record? Your Honor, what we are asking for in that the fact is that this inadmissible evidence affected the trial court's decision and that's what the harm was. So why is a public report issued by an agency whose duty it is to regularly prepare and issue such reports on which the agency relies not admissible under the public records exception of the federal rules of evidence? Thank you, Your Honor. With respect to the biological opinion, the biological opinion was issued almost 10 years earlier. And the evidence, it got worse, not better. Well, Your Honor, I think... And your argument goes to the weight that should be given to it, not its admissibility under Rule 803, is it 8? I always get that. 803 subdivision 8, I believe, Your Honor. Yeah, that's right. Our argument, as stated in the briefs, was that the conclusions of fact, which are supposed to be what... Sorry, apologies. 803 subdivision 8 is supposed to be very limited based upon the legislative comments. Now, what happened here is essentially the entire biological opinion was admitted for the truth of the matters asserted. Now, we contended in our briefs that that was not a proper... But he then went on and he started there because that was 2008. But then he went and updated or went through substantial later evidence, as Judge Nelson says, that things didn't get better, they got worse. And so he certainly wasn't relying on what was the fact. The situation in 2008 is the end of the story. Well, Your Honor, I don't know that it's necessarily correct that things got worse rather than better. I may not be necessarily correct, but he went and looked at that question based on evidence from substantial and extensive evidence after 2008. Well, Your Honor, again, just reviewing at the statement of decision that we have, I don't know that the record actually supports that, that he's citing additional evidence beyond 2008. What he has cited was a... look to subsequent operations of the dam. He heard testimony as to the effect on migrations for the entire period, 2008, up until the court issued the decision. And at ER 181, he basically concludes at the top of that page that these takes will continue and that absent intervention by the court, essentially, the steelhead are going to be eliminated if the court doesn't act. Well, Your Honor, yes, that was his conclusion, but it was based upon the evidence that we are challenging in this appeal. And take paragraph 247, all right? He starts with the biological opinion. Then he relies, the expert members of the Fish Panel agree that it's well understood and cites testimony at the trial. Then he says the consensus of the Fish Panel, and he looks at the Fish Panel report. Then he says some more about the panel, which was 2016. It was certainly... No. It was later. Sorry. Based... Then more testimony. Then there's a 2016 letter from NMFS, which he then cites as a trial exhibit and testimony. And then he comes to the conclusion that the inadequate fish passage at BFD actually kills and injures an adult steelhead. This take is perpetual and ongoing and so on. So how can you say that he was... He included the biological opinion, but he went to many other things as well. Just for the sake of correction, the Fish Panel was actually concluded and did its findings by 2010. All right. Well, fine. But it was not the thing that you're complaining about. Right. But again, those were past operations. And what we are contending is that exactly what Judge Tallman is suggesting the Court should have done was just looked at the entire past operations subsequent to 2008. United implemented a number of improvements after 2008... To the existing fish ladder. To the existing fish ladder. So can I just take a step back? Why don't you just build a new fish ladder? It seems like everybody agrees a new fish ladder needs to be built. And maybe I don't understand how much a fish ladder costs to be built. But you're paying... If you lose, you're paying $3 million in attorney's fees. So that's money that could have been well spent on a new fish ladder. So help me understand what's going on here. Is this just... You're just trying to delay the inevitable? No, Your Honor. And I apologize that this... Your question requires me to refer to... Go ahead. ...information that is not inside the record. But at the time of trial, what we were looking at was a hardened ramp alternative which would cost about $40 million or more. Since the trial and the injunction, United has absolutely been trying to engage with NIMS and build a new fish ladder. What we were looking at was three alternatives, a hardened ramp alternative, a vertical slot alternative, and a gated notch alternative. The gated notch alternative is highly experimental. Further analysis and study made it determined that it wasn't viable. So now we focused on two alternatives, a hardened ramp alternative, which would require substantial boring into the river because of the flashiness of the river. But what you're suggesting... See, everything you're telling me, very helpful, by the way, is that you're on board, too. You understand something needs to be done. So why are we spinning our wheels on this litigation? And maybe the answer is because NIMS... I'm sort of wondering why they're not here. I almost would have liked to have them here as amicus to tell them, do your job. I mean, that really is what needs to happen here. And my assumption is plaintiffs are frustrated because NIMS isn't doing its job, hasn't been doing its job, has allowed you as the dam operator to be operating effectively without the proper regulatory requirements for the last several years, and they just took a citizen suit to you. My... It doesn't look like you've made this argument, but what I'm more concerned about here is can you award injunctive relief where... They seem to have shown an imminent harm that's going on, but if there's no imminent remedy to that harm, can you actually... I don't think you've made this argument, but I'm worried that the district court may have overstepped its bounds on awarding an injunction in this context and how... I mean, he tried to be very careful, but it raises a really novel issue here that I can understand your concern about being bound under. So is that... Anything that I'm saying part of an argument you've made? Your Honor, I do believe that it ties in with the indispensable party issue. Well, I don't think that they can be indispensable parties. I think the government's exactly right that they have sovereign immunity here. The district court's instinct was exactly right that he wanted them there. He did the best he could, got testimony from the government agency. But I think your indispensable party argument, unfortunately, is a loser because of the sovereign immunity argument. Well, no, but your argument is that they're therefore indispensable. Yeah, yes, Your Honor. Because they are an indispensable party, the suit needs to be dismissed because of the concern you're raising, Your Honor, that relief cannot actually be provided in this case because we do need NIMS approval. We need approval from the Army Corps of Engineers. But relief was provided. I mean, in other words, he, recognizing the problem, he tailored the relief to making sure that you got to NIMS, if that's what we're calling it, the appropriate plans and applications. And that is a remedy. I don't know why it's not a remedy. The problem here is that there's been an inordinate delay, and what he's trying to remedy is the delay. Now, it's true that in getting, I mean, in getting a plan to the agency. Now, the agency may ultimately, you know, drag its feet, I suppose. But that could, at that point at least, you'd have the possibility of an APA case against the agency. If they were not, if they had the right documents to proceed on, the right plans to proceed on, the problem is that they haven't because you haven't been giving them what they've been asking for. So I don't see either why there's a, so the question is, it doesn't look like there's a indispensable party problem. And I think Judge Nelson's asking whether there's a separate problem as to whether this kind of relief is somehow wrong for another reason. But you haven't made another argument about it. Well, Your Honor, as far as we could determine from the legal authorities, indispensable party is really directed at that issue. And if I could just moment for, just for a moment. Can I ask a question, though, about that? Could they seek damages under the citizen suit provision? Your Honor, they did seek $6 million in compensatory damages. And has that been ruled on? It was denied. It was denied. What was the basis for the denial? If there's take sufficient to award injunctive relief, why isn't there take sufficient to award damages? I don't recall the exact reasoning of the trial court because it hasn't been appealed, so it's been final. But I believe that he felt that he couldn't award that monetary relief. I think that Judge Carter's determination was that really all plaintiffs Let's just solve the problem going forward. Yes, was injunctive relief. Because these particular interventions had standing because of their interest in this deal, but they weren't economically or in any other determinable way injured. Correct, Your Honor. And I would just like to point to the judgment because I do think that it addresses some of these issues that we're raising and why NIMS is an indispensable party. At excerpts of record, page 13, one of the issues has been stranding and handling of steelhead when they become stranded. And I'm quoting from the judgment here. It says, Because United must request NIMS Long Beach assistance and supervision when stranded fish need to be hauled or handled, NIMS shall respond promptly to a request for such assistance. And that's part of the injunction? That is part of the injunction, yes, Your Honor. See, that is where I'm concerned. I think it's clear that the district court had authority to order you to submit an application, and I have not gone through the injunction with the fine-tooth comb if there are actually sections. But what you're pointing out to me actually does give me pause. And there is another section of the judgment of the injunction which is directly targeted to the designs and modifications, Your Honor. It says that United shall complete evaluations and 100% design sufficient for United to, quote, meet NIMS's directions for the detail required for an adequate habitat conservation plan for one, the hardened ramp alternative, and two, the 400-foot notch alternative. But again, Counsel, Judge Berzon pointed out, why isn't a remedy for that, a suit by United against NIMS, challenging presumably this would be done in connection with seeking an ITP? And unfortunately, Your Honor, that's probably where this will be headed after this decision. But the issue as far as what – But you haven't even filed the application yet, have you? We're still working through the engineering and the hydraulic problems. So that issue is not ripe yet for us to rule on. Well, as far as the court's order requires these things by a certain timeline and requires NIMS participation. But the court said you can come back and seek a modification, did it not? And is requiring 120-day status reports to the special master to keep tabs on the progress? And United has been submitting those 120-day compliance reports. Have you gone back to the district court to ask for any extensions of deadlines or other relief? We have not gone back to modify the injunction, Your Honor, because as we reviewed the legal authorities, while the appeal is pending, there is no jurisdiction for the district court to modify the injunction. Okay. Before you sit down, there was a significant amount of briefing, post-briefing, with regard to a dispute over what exhibits were actually admitted in the record. And my question is, why did you not pursue Rule of Appellate Procedure 10E to ask the district court to resolve your challenge to the record? Oh, that wasn't our challenge to the record, Your Honor. Okay, then I'll save that question for the other side. We were relying upon the exhibit list, which is docket number 178, which included notations of what had been stipulated. But there's all kinds of competing declarations as to what was or was not admitted at the close of trial. And it seems to me the rule speaks directly to resolving that issue. The onus is on the parties to go back to the district court and settle the record. And apparently you didn't do that, neither side. Well, yes, I apologize for that, Your Honor. Well, I don't know how we can do it because it really requires the judge who was there at the time to say this is what I admitted and this is what I refused. We did submit a post-trial exhibit list on January 8th after the conclusion of the trial testimony. That's what we are relying upon. But why does any of this matter? Did the district judge rely on any of those documents? I don't see the district judge relying on any of those documents in its statement of decision. So why does it matter? Because those were exhibits that plaintiffs raised. I understand that. But if he didn't rely on it, they're not relevant to our determination as to whether the factual findings were clear error or not. So I don't know what they're relevant to. Well, that was plaintiff's contention that these additional exhibits were clear error. You mentioned the language in the order that you mentioned before in response to Judge Nelson's question that said something about what the NMFS is supposed to do. It's right here. So the first excerpt that I quoted was excerpts of record, and it's on excerpts of record page 13, but on the actual docket number it's page 9, lines 23 through 25. And on the subsequent excerpt that I quoted from was excerpts of record page 9 of that same document number, which is page 5 of that document, and it's lines 11 through 12. And there is a subsequent provision on that same page which states that the steelhead passage alternative selected must meet the steelhead passage design criteria set forth by NMFS during NMFS's review and approval of the alternative. But that's not a directive to NMFS. No, but it is requiring NMFS's participation and approval in the design process. How this usually works, Your Honor, is that the applicant, which is United in this case, works with NMFS to try to come to some agreement on what the application is, but they don't necessarily need NMFS's approval before submitting the application.  All it says is you're supposed to meet NMFS's directions. Yes, and this is all pre- If they don't have any directions, you don't have to meet them, so I don't see what the problem is. Well, it's implicit in requiring NMFS's participation here, and that's the problem. Oh, it doesn't say they have to have any directions. It just says that if they have any directions, you have to meet them. Well, Your Honor, I don't know that that's how the passage reads, but it is certainly a part of NMFS's- Well, it is how it reads. You're saying it means something else. Okay. Thank you very much, and we'll give you a couple minutes to rebuttal. Thank you, Your Honor. Christopher Espral for the plaintiffs' appellees, Wichita Foundation and Center for Biological Diversity. May it please the Court. There are a couple points off the bat that I wanted to address that my opposing counsel has made. As this Court has pointed out, District Court Judge Carter, in the course of conducting an 11-day bench trial and hearing 16 witnesses and proceeding to write a 152-page district court decision with 222 separately enumerated findings of fact, clearly didn't rely exclusively on the biological opinion that United Conservation District has challenging. One of the key documents is this 2010 fish panel report, and it was written by a group of fisheries scientists that were retained by United Water Conservation District. And that panel found that Verne Freeman Dam, like everyone who, and even their own experts who testified at trial have said, unmistakably Verne Freeman Dam blocks the migration of steelhead. Can I just ask a question? Because I think you're right on all of that. Why hasn't NIMPS been doing anything? I mean, that's what I'm struggling with here is they should be here doing, you're doing NIMPS's job for them. That's how I read this. We agree with you, Your Honor, and that's what Judge Carter had to say as well. And he said it during the trial. He said it in pre-trial. But that's troubling to me because the regulatory agency, the real process here is a regulatory process to get it approved. You can't approve it. The judge can't approve it. NIMPS has to approve it. And so in that sense, they sort of are an indispensable party. Could you have brought an APA claim against NIMPS for not acting to enforce a, operating without a take permit? Yes, Your Honor. That very question was posed to me by Judge Carter more than once during the trial. And there was a briefing on it as well. And he was strongly suggesting, and it's in both his decision but also in the transcripts, that he really wanted NIMPS to, NIMPS meaning National Marine Fishery Service, NIMPS for short, that he wanted NIMPS to participate. And he wanted them to participate for good reason. Well, they sort of did because they came in and testified. And what did they do? Did they just come in and say, yeah, we've got a real problem here. There's take going on. We're looking the other way, but we hope the plaintiffs will handle it. I mean, that sort of is the gist I get. Well, that would not be exactly what they had to say. And I think that they were very helpful to the district court. And I also, just to back up, I wanted to disabuse. But did they give a reason why they weren't taking action? Effectively, you have, I mean, I don't want to say it too harshly, but it's an illegal operation going on right now, and NIMPS isn't doing anything about it. Did they explain why they aren't? Indirectly. And what they had to say is, I used to work for the U.S. Environmental Protection Agency for 15 years, and I was well familiar with the phenomenon, the bureaucratic phenomenon that they were talking about. It's like, well, and from their point of view, and they were clear about this in their testimony and on the record, the burden is on the applicants. We are more like a court in a sense. We stand out. But what Judge Nelson's pointing out, yes, as to revening this, but what about the fact that they're operating, that they are doing illegal takes in the meanwhile? Yes, they finally did. And Judge Carter was very pointed about this. They finally issued a very pointed letter. Now, again, it was just a letter. It wasn't a formal action. A week after we filed our citizenship. You're basically telling them, they sort of, I think I read this letter, and they sort of said, hey, hurry and get us something. We're serious about this. Yes. Well, even more than that, they said, particularly with your water diversions, we think your water diversions are taking steelhead unlawfully. You don't have Section 10 authorization. We've given you guidance in our biological opinion about how much water we think you can take, and you're taking more water than our guidance says. And if you don't stop, then you're doing so at risk of criminal liability. And that letter changed. Okay. But that was in what, 2016, and nothing's happened in 2016? That was 2017, Your Honor. All right. And now it's 2020. And now it's 2020. Forgive us for being suspicious about NMFS's intent here. Yeah, well, it was, again, we would agree it was too little too late, which is why we filed our citizen suit, which is why Congress enacted this provision. I think the other piece of this, and I think it was also discussed at trial, is that at some extreme point you do have an APA claim against the agency for delay, but it's an extreme point. So, essentially, if this injunction doesn't work, that's a background possibility. I think that that's absolutely right, and that's what we said when we filed a conditional motion for joinder, pretty much at Judge Carter's direction. And the government had made it plain through a letter to Judge Carter that we don't think we can be joined involuntarily, and we don't want to join. Which I think is actually a defensible position, but it puts the burden back on either the plaintiffs effectively to maybe sue them under a waiver of that sovereign immunity, which is an APA claim. And have you thought about that? We have, and we briefed it. But, I mean, you haven't filed one. No, we haven't. Because there's no final decision, which is the problem here, it would have to be in the nature of a delay suit. It would be. Like a mandamus. It would be, yes. No, a mandamus. There's an APA provision. There is. But it's still, I mean, my understanding is that Judge Carter sort of said, well, we're not there yet quite. Yes, yes. Well, and can you do that? Can a citizen suit bring an APA claim for lack of enforcement? That's effectively what's going on here. Well, that's an interesting question. Arguably no. I mean, there's the lead case, Supreme Court, Heckler v. Cheney, that in general prosecutorial discretion. Exactly. So I think it would be. But you may not have that remedy, at least at this stage. I think that that's probably right. And it sounds like what the district court's trying to do, which is laudable, is move this along so you actually can get some sort of an APA claim to keep this moving. Can I ask a question? I think that's right. Is there any possible utility in having our mediation people, who are terrific, sitting down with the two of you and seeing whether there's anything to be done? Or is the problem exactly that since NIPS isn't here, that's not going to get anywhere? Well, I think that's a very important question. And I would point this out. The district court Judge Carter is a very forceful individual. He certainly is. We know him. And he ordered us into chambers more than once and did his magic. He had engaged in a group hug at one point and threats on the other end of the spectrum to try and get us to work it out. He's also appointed a retired judge, Judge Smith, to oversee a special master process also on the record with the same intention. I want you folks to try to work things out. So there is a judicial process already at the district court level. Despite this being on appeal, United represented that, well, the injunction is stayed. That's not actually accurate. Is the injunction stayed? I didn't think it was stayed. It's not stayed, no. And Judge Carter does retain jurisdiction at this moment to modify the injunction. We discussed that in open court with him. He's trying to enforce it. He acknowledged that, that he had. But he indicated he was inclined not to until pending the appeal. Well, that's one thing that actually, I think, helps the injunction on appeal as well as the district court's willingness to say, hey, look, I'm doing the best I can to order this, but I recognize that things are going to be fluid and we may have to revisit some of these provisions. Can I ask about, I don't think there's a serious debate that the district court has authority to order the dam to seek a permit from NIMS. What I'm concerned about is it goes further, and I think Judge Berzon already made the point that the EOR 9 probably doesn't impose a burden on NIMS, but EOR 13 seems to where it says NIMS shall respond promptly to a request for such assistance. How would the district court, does the district court have authority to issue an injunction and tell NIMS to respond expeditiously when they're not a party? That concerns me. This wasn't briefed, nor is there detailed reasoning provided. However, in the course of preparing for this oral argument, I did note a case where a court referred to the ability to bring in a third party, even though there was no claim against them, because the relief that they wanted to consider between the actual parties might necessarily implicate the involvement of the third party. But that is the indispensable party inquiry. Well, but anyway, the point that I was trying to get to was the notion of the All Writs Act, and I have seen it in other contexts. But is that a waiver? The All Writs Act isn't a waiver of sovereign immunity, is it? It's not a waiver of sovereign immunity. I would agree with that. But I think that this much, that the All Writs Act extends authority to the courts. It's not, well, I guess I back up. I mean, where I was going to go is it's not us in that setting suing the federal government, which would obviously implicate sovereign immunity. But if the court were to bring in a third party and say, I need you here and I'm invoking my authority under the All Writs Act to have you here because the relief that I'm going to argue or impose implicates you. If we were to strike that sentence, would that be very difficult in terms of the overall picture? It would not. Are there any other provisions in there like that that NMFS has ordered? I mean, I guess it's really a question for the other side. But are you aware of any other provisions in there? I'm not. And this is really very much a subsidiary matter. This is not the heart of it. Right. You wouldn't have a lot of heartburn over that anyway because you get 95 percent of what you want from the injunction that's in place. Absolutely. Absolutely. The core issues are twofold. It's one that Burn Freeman Dam blocks the migration of steelhead and there needs to be a new fish passage structure. The people that United has hired for decades have said that repeatedly. United doesn't contest that, number one. And it sounds like they are trying to do it. I can't weigh in on how expeditiously. But it sounds like they're legitimately trying in good faith. I mean, you've worked for the government. You know these things can get very difficult. I mean, not just after you apply, but even before you apply, trying to comply with all the regulations. So I don't know how to assess. I mean, that's for the district court to determine. But is your sense that things are actually starting to move forward? Well, yes and no. United is definitely spending significant money and they've produced very valuable analysis and reports. But they've fallen short in that they have the injunction is crystal clear, ordering United to do 100% physical modeling and design of two alternatives, a hardened ramp and a 400-foot notch. And United, in working with their consultants, have decided they don't like either of those two options. Instead, they've chosen a third option. And they could go back to the judge and ask for permission to do that. They have not. They have not. They're in direct violation of the injunction. They're proceeding with this vertical slot. Now, the vertical slot was one of the four options that Judge Carter ordered them to study, but he was unambiguous that the vertical slot was to be studied to a lesser level just to meet alternatives analysis for purposes of our government. See, this is my concern. Can a district court get that specific to order them to follow a specific mechanism when NIMS, what he can order them to do is submit something to NIMS, and then NIMS can determine whether that meets the regulatory requirements. He didn't order them to submit any one of those four alternatives. He ordered a process, you know, study these four alternatives, two of them to a lesser, a greater degree. But that's sort of my point. What basis does he have to do that when they should be able to go to NIMS with something and get that feedback from NIMS? The district court on the front end shouldn't be able to say, in my opinion, this one doesn't work under the regulations. That's NIMS's job to figure that out. Well, here's why. What Judge Carter did was appropriate. It could if it was a legal issue as to whether or not a particular proposal was a reasonable and prudent alternative, couldn't it?  Presumably looking at the cost and the efficacy of the particular design. I would agree wholeheartedly with that and add Judge Carter didn't come up with this at whim and without careful consideration and reliance on National Marine Fisheries Service. I think, Judge Nelson, Your Honor, your point is well taken, that Judge Carter shouldn't be out on a whim of his own, and I think he eminently recognized that. He's not a scientist. He asked for NIMS's guidance. I mean, he had our experts. Isn't this the agency's preferred reasonable and prudent alternative? Wasn't it 2A? It was, both for the water diversions, which are PA2A, and that's what Judge Carter ordered, which was more lenient than what we had argued for. He went with NIMS's position. But with respect to the fish passage that Judge Nelson is asking about, that he asked for an amicus brief from NIMS and said, give me guidance. I mean, I've got dual-wing experts here saying which of these fish passage alternatives seem the most viable, and United has been stalling, and NIMS has been stalling, and we've had a decade of this, and we still don't have a fish passage. I've got to solve that problem. I've got to be more directive. Was there any mediation in the district court? Was NIMS there? No. Were they asked to be there? I take it back, Your Honor, just to be fully accurate, not in some of the most of the sidebars that Judge Carter had us do, NIMS did not participate.  You don't mean literally sidebars. Discussions. Discussions. In chambers. In chambers. In chambers discussions, to be accurate. Okay. There were some discussions that NIMS participated in, especially after trial. Do you have any sense whether they would voluntarily appear at a mediation if we asked them to? My sense from everything that I've heard from them, and we've actually suggested that, is that they are disinclined to do that. They're actually here in the courtroom. I know, but they're not here. They're here, but they're not here. Okay. Not necessarily here. Yes. You have a little more time. Okay. I just wanted to emphasize that to the extent that United argues that Judge Carter committed reversible error in allowing Mr. Spina and Mr. Brumback to testify at trial and then accepting the biological opinion into evidence, that these are meritless and that some of the representations that they make to support their argument are just not true. The idea that Mr. Spina and Mr. Brumback were somehow our witnesses and therefore we had a duty to disclose them, I mean, the record is replete over and over again. This was Judge Carter's idea, not ours. He surprised both parties at the summary judgment hearing when he said I would like to have NIMS come testify because this is a really complex matter. Well, but the court is authorized under the rule to appoint expert witnesses, is it not? Completely, yes. Yes. So I just wanted to be clear that the record indicates that United seems to suggest that these were in effect our witnesses, but they're clearly not. But the court selected them and United didn't object. The government didn't want to provide both of their witnesses, but the court ultimately heard from both of them. That's right. And I also just to emphasize another point that emphasizes that they weren't our witnesses. In our conditional motion of joinder that I referred to earlier, we actually represented to Judge Carter that we thought that just Anthony Spina should testify, not Darren Brumback, and Judge Carter had both of them testify over contrary to our suggestion. But they appeared on your witness list at some point. That's why he's attributing it to you, right? We added them to our witness list late after Judge Carter had called them at the summary judgment hearing, making it apparent that he was really interested in what they had to say and that it was highly likely he was going to want them at the trial. So we figured, well, just to have a complete record, we should put them on our witness list. And in terms of, like, disclosure of Rule 26 obligations, we clearly had no duty, even if somehow you could construe them as our witnesses, we clearly had no duty to write Rule 26 reports for these individuals.  And at most, Rule 26 would say to someone for whom expert reports are not necessary that we just need to give a summary of their expected testimony and a list of reports. But United had the biological opinion, right? It essentially had their report. Indeed. And that's what they testified to. And that's what they testified to. That's correct. And they testified. Before you sit down, could you help me with this dispute over the record and whether or not all of the exhibits that were admitted were properly before the court? Yes. I think that we didn't need a Rule 10 motion to this court to resolve it. There's still a lot of ink over the issue. Is it something that really matters? I don't think so. It doesn't seem like it matters at all because the district court judge didn't rely on any of these exhibits. I think that's not entirely true. Most of them he did not. Most of them were like these were things that were in our briefs and he cited to other things. But there's one or two that I think he did cite to. Really? I don't know. I thought not. Yeah. But we will check. Maybe I'm wrong. All right. But I would just say this, that the record in front of the court is clear. So he said in the transcript that I'm going to, you know, the parties have conferred and every document that's been marked on the exhibit list is into evidence except for three that he specifically read into the record. I mean, I read all of that, but now there are dueling declarations here. And, I mean, if that's the issue that we really need to resolve in order to decide this appeal, we're going to have to send it back to the district court and say you resolve it. Well, I think that's definitely not the case. These are, you know, the tip of the tail wagging the dog. I mean, there's a wealth of other evidence. The 2010 Fish Panel Report, the years of correspondence, the testimony of Anthony Spina who wrote the biological opinion, this is. . . Okay. Thank you very much and thank you for your help. Sir. Why don't we make it two minutes because it was a 20-minute argument. All right. Thank you, Your Honor. Very quickly. . . Do you want to respond briefly to my mediation question? Oh, we are definitely open to mediating. We as part of the Ninth Circuit. But what about the, you know, the basic problem of NIPS not being here? Is there any chance they would come if we. . . Judge Smith is supposed to resolve issues. We've invited NIPS to participate with Judge Smith. We have not yet received a response from NIPS. I do think it is valuable, absolutely, Your Honor, as you're suggesting, to have the parties have a mediation with NIPS. Whether or not they will join voluntarily, I can't speak for. . . I'm just a little concerned about injecting further delay here. I think it might be more helpful if we just give you an answer to the appeal and you all get on with doing whatever it is that needs to be done. Oh, we can give you an answer to the appeal and or for our mediators to settle after that. Well, Your Honor, yes. I can only speak for Your Honor. It just seems like the kind of thing that has a lot of moving parts, and if there was some useful way to get everybody in the room, it might all. . . Certainly, Your Honor, there are a lot of moving parts. But the special master is not mediating the merits. I'm sorry? The special master is not addressing the merits of the case. He's monitoring compliance. As I understand, he went to the diversion, he walked the site, as I understand. . . Right, but that's a different point. Are you going to meet these deadlines, the April 3rd deadline and other deadlines? We've selected our preferred alternative, the vertical slot. Which is not one of the ones he told you to study. Not one of the top two, and that's the order, that's the issue, Your Honor, that Judge Nelson has. . . Did you go back to the judge and ask him to change the injunction in that regard? Well, Your Honor, again, based upon the legal authority that I've reviewed, yes, the court has the ability to enforce his injunction while the appeal is pending, but not modify the injunction while the appeal is pending. So that's the issue, Your Honor. And I just wanted to touch on the biological opinion, a comment that Judge Tolman made about the RPA1, excuse me, the fish passage. The biological opinion was clear that it was not dictating which design or which criteria needed to be set forth in the alternative. At the time there was a rock ramp alternative that we felt NMFS really wanted and we said that's not going to work. It was clear that it was not dictating any design criteria, rather that there was going to be a process because, as Your Honor stated, there are a lot of moving parts here that we need to figure out. No one wants to build a dam and have it fail. That's absolutely 100 percent. But the purpose of the biological opinion is basically to assess the impact of the dam operations on the species, is it not? And RPA1 was directed to long-term fish passage alternatives and it required the appointment of the fish panel, which would recommend alternatives, and the top two there were the hardened ramp and the vertical slot. Okay, but as you say, the biological opinion didn't take any position on which was preferred, right? Correct, because there was a lot of studying that needed to be done. Did Judge Carter take any position on which was preferred? In his order, I think he just took direction from NMFS's amicus brief. There wasn't a whole lot of testimony on what was the best alternative moving forward scientifically because the studies just haven't been completed. But now we're in a position where we feel the vertical slot is the answer. There's about 30 of these vertical slots on the West Coast. It's a proven alternative. It's not going to be in the river. It's not going to fail when there's sediment and boulders rolling down the river. That's absolutely what we need to avoid. And nothing in this injunction prevents you from making the application based on that plan, but it does require you to study the other two. And that is an issue that I raised in this argument here is that that provision appears to vest NMFS with the decision of what is 100% design. If we're talking about shovel-ready designs, that's going to be years, and we're never going to meet that alternative. We submitted an action plan to the court in June. Hold on a second. Years to get shovel-ready designs? Shovel-ready designs, because that would involve physical modeling of the experimental alternative of the knot. But see, it is years. That's not okay. That's not what we want to do either. Well, yeah, but you've already been operating for 12 years, basically, without a permit. Now you're telling the court you're going to have to operate for several more. Anyway, that's for another day. Not with our action plan that we submitted in June. We've selected an alternative. We're going to be submitting designs by June 30, and we're going forward. All right. Thank you both for your argument in this forever case, of which there are many. Wichita Foundation v. United Water Conservation District is submitted, and we are in recess. Thank you very much. All rise. This court stands in recess.
judges: Berzon, Tallman, Nelson